Case No. 15-1079

---

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

**REMBRANDT VISION TECHNOLOGIES, L.P.,**

*Plaintiff-Appellant,*

**v.**

**JOHNSON & JOHNSON VISION CARE, INC.,**

*Defendant-Appellee.*

---

Appeal from the United States District Court for the Middle District of Florida in case no. 11-CV-0819, Judge Timothy J. Corrigan.

---

## APPELLANT REMBRANDT VISION
## TECHNOLOGIES, L.P.'S
## REPLY BRIEF

---

Ronald J. Schutz     Jacob M. Holdreith
Eric J. Magnuson     Brenda L. Joly
Ryan M. Schultz     Jamie R. Kurtz
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402-2015
Tel.: (612) 349-8500

*Attorneys for Plaintiff-Appellant*
*Rembrandt Vision Technologies, L.P.*

April 6, 2015

FORM 9.    Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Rembrandt Vision Technologies, LP v. Johnson & Johnson Vision Care, Inc.

No. 15-1079

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (**appellant**) (respondent) (appellee) (amicus) (name of party)

Rembrandt Vision Technologies, LP certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

Rembrandt Vision Technologies, LP

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

The party named in the caption is the real party in interest.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.    ✓    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Robins Kaplan LLP (formerly Robins, Kaplan, Miller & Ciresi LLP): Ronald J. Schutz, Jacob M. Holdreith, Eric J. Magnuson, Diane L. Simerson, Ryan M. Schultz, Patrick M. Arenz, Christine Yun Sauer, Melissa A. Goodman, Cole M. Fauver, Samuel L. Walling, Glenna L. Gilbert, Brian N. Aleinikoff, Jamie R. Kurtz, Allen A. Slaughter, Jr., and Brenda L. Joly. Bedell, Dittmar, Devault, Pillans & Coxe, P.A.: John A. DeVault, III and Courtney K. Grimm. Germer Gertz LLP: Lawrence L. Germer, Charles W. Goehringer, Jr.

April 6, 2015
Date

/s/Brenda L. Joly
Signature of counsel

Brenda L. Joly
Printed name of counsel

Please Note: All questions must be answered

cc: All Counsel

i

# Table of Contents

Page

Certificate of Interest ............................................................................... i

Table of Authorities ................................................................................ iv

Summary of Argument ..............................................................................1

Argument ....................................................................................................4

I.     This Is the First and Only Appeal to Consider Rembrandt's
       Rule 60 Motion: No Mandate Forecloses the Issues in this
       Appeal. .............................................................................................4

II.    Rembrandt Presented Evidence Meeting the Eleventh Circuit's
       Standard for Relief under Rule 60(b)(3) ......................................7

       A.     Rule 60(b)(3) Allows for Relief When Judgment Was
              Obtained through Use of Perjury..........................................8

              1.     Proof of Complicity Is Not Required. ....................8

              2.     JJVC at a Minimum Should Have Known of the
                     Falsity of Its Expert's Testimony. .......................15

       B.     JJVC's Failure-to-Produce Misconduct Also Entitles
              Rembrandt to Relief under Rule 60(b)(3).........................17

       C.     The Fraud and Misconduct Prevented Rembrandt from
              Fully and Fairly Litigating its Case..................................19

              1.     The JMOL on the "Soft" Limitation Does Not
                     Preclude Relief........................................................23

              2.     Ample Evidence Exists Proving the Accused
                     Contact Lenses Are Soft that Can Be Presented in a
                     New Trial..................................................................25

III.    Rembrandt Also Presented Evidence Meeting the Eleventh
        Circuit's Standard for Relief under Rule 60(b)(2) ...................................29

IV.     Denying  Rembrandt Discovery Was an Abuse of Discretion.............31

Conclusion..........................................................................................................33

# Table of Authorities

<u>Page(s)</u>

## Cases

*Abrahamsen v. Trans-State Express, Inc.,*
    92 F.3d 425 (6th Cir. 1996) .......................................................................11

*Bonar v. Dean Witter Reynolds, Inc.,*
    835 F.2d 1378 (11th Cir. 1988) ....................................................... 11, 12, 22

*Bros Inc. v. W.E. Grace Mfg. Co.,*
    351 F.2d 208 (5th Cir. 1965) ................................................................... 8, 12

*Cox Nuclear Pharmacy, Inc. v. CTI, Inc.,*
    478 F.3d 1303 (11th Cir. 2007) ....................................................................7

*Cox v. Administrator U.S. Steel & Carnegie,*
    17 F.3d 1386 (11th Cir. 1994) ....................................................................33

*Creative Internet Adver. Corp. v. Yahoo Inc.,*
    476 F.App'x 724 (Fed. Cir. 2011) .............................................................31

*Engel Indus., Inc. v. Lockformer Co.,*
    166 F.3d 1379 (Fed. Cir. 1999) ....................................................................4

*Frederick v. Kirby Tankships Inc.,*
    205 F.3d 1277 (11th Cir. 2000) ....................................................................7

*Harre v. A.H. Robins Co.,*
    750 F.2d 1501 (11th Cir. 1985) ................................................... 14, 15, 22, 23

*Harre v. A.H. Robins Co.,*
    866 F.2d 1303 (11th Cir. 1989) ..................................................................14

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.,*
    322 U.S. 238 (1944) ............................................................................ 8, 9, 10

*Liquid Dynamics Corp. v. Vaughan Co.,*
    449 F.3d 1209 (Fed. Cir. 2006) ..................................................................28

*Piambino v. Bailey,*
757 F.2d 1112 (11th Cir. 1985) ................................................................ 5, 26

*Rembrandt Vision Technologies, L.P. v. Johnson & Johnson Vision Care, Inc.,*
725 F.3d 1377 (Fed. Cir. 2013) ........................................................... passim

*Ritter v. Smith,*
811 F.2d 1398 (11th Cir. 1987) ........................................................................5

*Rozier v. Ford Motor Co.,*
573 F.2d 1332 (5th Cir. 1978) ........................................................ 23, 24, 25

*Sarkes Tarzian, Inc. v. U.S. Trust Co. of Fla. Savings Bank,*
168 F.App'x 108 (7th Cir. 2006) ...................................................................25

*Standard Oil Co. of California v. United States,*
429 U.S. 17 (1976) ...........................................................................................5

*Stern v. O'Quinn,*
253 F.R.D. 663 (S.D. Fla. 2008) ..................................................................33

*Upjohn Co. v. U.S.,*
449 U.S. 383 (1981) .......................................................................................33

*Viskase Corp. v. Am. Nat'l Can Co.,*
979 F.Supp. 697 (N.D. Ill. 1997),
*aff'd in relevant part,* 261 F.3d 1316 (Fed. Cir. 2001) ................................13

## Other Authorities

11 Wright, Miller & Kane, *Federal Practice & Procedure* (2012) ............. 9, 10, 11

Title 9, US Code, Section 10(a)(1) .......................................................................11

## Rules

Federal Rule of Civil Procedure 26 ....................................................................20

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) .................................................18

Federal Rule of Civil Procedure 26(b)(3)(A) .....................................................33

v

Federal Rule of Civil Procedure 37 ...................................................................26

Federal Rule of Civil Procedure 60 ...........................................................passim

Federal Rule of Civil Procedure 60(b)(2) ................................................passim

Federal Rule of Civil Procedure 60(b)(3) ................................................passim

Federal Rule of Civil Procedure 60(b)(6) ..........................................................10

Federal Rule of Civil Procedure 60(c)(1) ..............................................................9

Federal Rule of Civil Procedure 60(d) ...............................................................10

## Summary of Argument

JJVC's position—essentially that courts should ignore fraud and misconduct—is an affront to the integrity of the justice system. JJVC's brief largely diverts attention from the actual standards for relief under Federal Rules of Civil Procedure 60(b)(3) and 60(b)(2). Instead, JJVC implores this Court to hold that no relief can be granted simply because the judgment involved a judgment as a matter of law ("JMOL"). Whether a judgment was entered upon a jury verdict, bench trial, JMOL, or summary judgment, it is Rule 60 and the Eleventh's Circuit's Rule 60 precedent that are dispositive of Rembrandt's right to relief.

Rembrandt meets the standard for relief under Rule 60(b)(3), which does not require proving that the outcome of the case likely would be different. Proving complicity also is not a requirement for relief. But if this Court holds the Eleventh Circuit would disagree with its own precedent on this point, and the majority of case law interpreting Rule 60(b)(3), at a minimum the case must be remanded for discovery regarding complicity. Holding that a party must meet a legal standard without permitting the party an opportunity to make a full record does not satisfy justice.

Rembrandt is entitled to a new trial under Rule 60(b)(3) because fraud and misconduct deprived it of a fair proceeding. JJVC's misconduct in not fully producing the results of tests it requested, and Dr. Bielawski's lies, concealed the truth: the experts who actually conducted tests for JJVC found evidence of the very surface layer which was the basis of Rembrandt's infringement case, *i.e.* a layer in JJVC's accused lenses with a higher HAM-to-silicon ratio than the underlying lens bodies. Had the misconduct and fraud not deprived Rembrandt of that evidence eviscerating JJVC's primary infringement defense, Rembrandt would have been able to approach trial differently, including spending more time proving the less-disputed "soft" claim element that was the basis for the JMOL.

Not only would the trial have been different, the fact that judgment involved a JMOL, which was the result of a discretionary exclusion ruling coupled with a refusal to consider circumstantial evidence, does not preclude relief under either 60(b)(3) or 60(b)(2). It is totally incongruous that an expert's truthful testimony that corrects a mistaken disclosure in his expert report can result in a directed verdict against the party presenting

the truthful expert, while the opposing party escapes any consequence of presenting actual perjury from its expert witness. That result cannot stand.

The JMOL in this case does not mean that Rembrandt's infringement claim lacks merit or that remand would be futile. The District Court itself acknowledged proving the accused lenses are "soft" should have been a "lay-up" as "everybody in the entire North American continent knows [the accused lenses] are soft contact lenses." A4051, A4056. If JJVC had not presented perjured testimony, "soft" would have been the central issue at trial—if there would have been a trial at all—and evidence more focused on the point would have been presented. Thus, the impact of the perjury extends beyond the confines of its precise subject.

JJVC paints this appeal as involving merely impeaching evidence that its expert did not personally perform testing to which he testified. The new evidence, however, did more than just impeach the testimony of Dr. Bielawski. The withheld evidence supports Rembrandt's infringement case-in-chief and destroys JJVC's main non-infringement defense. Rembrandt thus also meets the separate standard for relief under Rule 60(b)(2), including that a new trial would probably produce a different result.

3

# Argument

## I.  This Is the First and Only Appeal to Consider Rembrandt's Rule 60 Motion: No Mandate Forecloses the Issues in this Appeal

The mandate from the original appeal does not control the issues in this appeal. *Rembrandt Vision Technologies, L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377 (Fed. Cir. 2013) ("*Rembrandt I*") addressed Rembrandt's direct appeal from the judgment in this patent case. Rembrandt's Rule 60 motion had not even been filed at the time the original appeal was filed, and was not before this Court in *Rembrandt I. See id.*; A57-58.

The very case JJVC cites in support of its mandate argument illustrates that a prior appellate mandate does not foreclose a Rule 60 motion and later appeal in the same case. *See Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1381-82, 1384-85 (Fed. Cir. 1999) (deciding on merits denial of 60(b)(3) motion despite mandate from earlier appeal). Courts have long "rejected the proposition 'that an appellate court's mandate bars the trial court from later disturbing the judgment entered in accordance with the mandate.' … [Such a mandate does not affect] the authority of a district court to entertain a Rule 60(b) motion such as the one at issue here." *Ritter*

*v. Smith*, 811 F.2d 1398, 1404 (11th Cir. 1987) (quoting *Standard Oil Co. of California v. United State*s, 429 U.S. 17, 18 (1976)).

*Rembrandt I* did raise an issue regarding the District Court's denial of Rembrandt's request, before judgment was even entered, for discovery regarding Dr. Bielawski's perjury. In a ruling the District Court has now stated was "ill-advised," A8, it denied the discovery request, A5682, and this Court declined to reach the issue. 725 F.3d at 1380 n.1. At most, this Court's refusal to reach the discovery issue merely indicates no right to discovery based upon the exact circumstances presented in Rembrandt's pre-judgment discovery motion, but nothing more.[1]

Nonetheless, Rembrandt did act diligently—through open records requests and state court proceedings— to obtain clear and convincing evidence of fraud and misconduct. Indeed, the evidence was so clear and convincing even JJVC was eventually forced to admit its expert lied. Opening Br. pp. 18-19; A7539.

---

[1] Moreover, no "mandate" can be drawn regarding the discovery issue because this Court explicitly declined to address it. "The 'mandate rule,' as it is known, is nothing more than a specific application of the 'law of the case' doctrine. … [I]t does not extend to issues the appellate court did not address." *Piambino v. Bailey*, 757 F.2d 1112, 1120 (11th Cir. 1985) (citations omitted) (emphasis added).

Nothing in the letter or spirit of *Rembrandt I* suggests that if a party is able to uncover, by any proper means, clear and convincing evidence of fraud, misrepresentation or misconduct within a year of the judgment—as Rembrandt managed to do here—that 60(b)(3), or 60(b)(2), relief is unavailable because the judgment resulting from the misconduct was affirmed on appeal. JJVC's argument to the contrary would render Rule 60 meaningless in that circumstance. Simply put, justice is not impotent to remedy fraud and misconduct even after an appeal.

Similarly, the *Rembrandt I* mandate does not address and cannot be dispositive of Rembrandt's motion for discovery regarding "complicity" filed after the *Rembrandt I* mandate issued but while Rembrandt's Rule 60 motion was still pending before the District Court. After the District Court issued its July 2014 Order indicating its "intention" to deny Rembrandt relief under 60(b)(3) because of lack of proof that JJVC or its counsel was "complicit" in the acknowledged lies, A15, A17, Rembrandt formally moved for discovery on that issue. A7653-54; *see also* A6137. That the denial of Rembrandt's pre-judgment discovery motion was raised in *Rembrandt I* is not dispositive because the circumstances of the second motion were markedly different, including that fraud had by then been clearly

established. *See* Section IV, *herein*. Whether it was appropriate to deny

discovery regarding complicity under the circumstances of the second

motion—the only discovery issue raised in this appeal—is entirely

different from whether it was appropriate to deny discovery in May 2012.

The October 15, 2014 denials of the second discovery motion and Rule

60 motion, A4, could not have been raised in the original appeal, which

was concluded before October 2014. A60, A62.

## II. Rembrandt Presented Evidence Meeting the Eleventh Circuit's Standard for Relief under Rule 60(b)(3)

Rembrandt is entitled to relief from the judgment because Rembrandt

proved (1) JJVC obtained the judgment through fraud, misrepresentation

or other misconduct, (2) that prevented Rembrandt from fully and fairly

presenting its case. *Cox Nuclear Pharmacy, Inc. v. CTI, Inc.*, 478 F.3d 1303,

1314 (11th Cir. 2007); *Frederick v. Kirby Tankships Inc.*, 205 F.3d 1277, 1287

(11th Cir. 2000). JJVC's brief largely ignores the actual Eleventh Circuit

standard for relief pursuant to Rule 60(b)(3); it doesn't even acknowledge

the standard until page 54 of its brief. It instead begs this Court to

disregard the governing law. Eleventh Circuit precedent cannot be ignored;

under that precedent, denying Rembrandt a new trial was an abuse of discretion.

JJVC committed misconduct by (a) presenting perjured expert witness testimony, and (b) failing to produce requested documents that would have supported Rembrandt's infringement case. Rembrandt does not need to prove intent or complicity on the part of JJVC or its lawyers. *Bros Inc. v. W.E. Grace Mfg. Co.*, 351 F.2d 208, 211 (5th Cir. 1965) (relief on the ground of misconduct can be granted "whether there was evil, innocent or careless, [sic] purpose"); Opening Br. pp. 49-50.

## A.   Rule 60(b)(3) Allows for Relief When Judgment Was Obtained through Use of Perjury

### 1.   Proof of Complicity Is Not Required

JJVC argues that Congress did not intend for perjury by a witness to be a basis for Rule 60(b)(3) relief absent proof of complicity of the party or its counsel. JJVC Br. pp. 57-60. It is wrong.

First, JJVC's discussion of *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) is highly misleading. *Hazel-Atlas* concerned fraud that was discovered "after the expiration of the term at which the judgment[] [was] finally entered" and discussed when such fraud should nonetheless

8

be grounds for relief from a judgment. *Id.* at 239, 244. At the time judgment was entered in 1932, the "term" doctrine imposed a time limit for seeking relief from judgments, the expiration of which triggered a much higher burden in order to obtain relief. *See id.* Rule 60 now imposes a time limit of "a year" instead of a "term" on seeking relief from judgments on basic grounds. Fed.R.Civ.P. 60(c)(1). The rule "abolished the significance of term time" and set a time limit for enumerated grounds for relief. 11 Wright, Miller & Kane, *Federal Practice & Procedure* § 2851 at 287 (2012); *see also* Fed.R.Civ.P. 60(b) advisory committee notes.

When the Supreme Court noted in *Hazel-Atlas* that "[t]his is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury," it was discussing whether relief should nonetheless be granted where relief was only sought after "the term at which [judgment] was entered had long since passed away." 322 U.S. at 245.

Nothing in *Hazel-Atlas* or the advisory committee notes to Rule 60 indicates that witness perjury should not be a basis for relief under 60(b)(3) when relief is sought within the one-year time limit. Instead, within that time period, finality of judgments yields to concerns of fairness in

9

litigation.[2] Proof of more than witness perjury, such as complicity of counsel, may be necessary for relief for fraud based on an *untimely* independent action or motion under 60(d) or 60(b)(6)—*i.e.* what are commonly referred to as "fraud on the court" or savings clause actions/motions. But 60(b)(3) is intended to provide relief in a broader array of situations when relief is *timely* sought.

That is the interpretation of Rule 60(b)(3) by numerous courts. *See* Opening Br. pp. 32-35, 37-40. The abundant law beyond just the Eleventh Circuit cited by Rembrandt on this point in its opening brief is ignored by JJVC. Instead, JJVC cites in a footnote in its brief a treatise to suggest that 60(b)(3) and 60(d)(3) "coexist with overlapping requirements" arguing that there is no difference when relief may be granted under either. JJVC Br. p. 61. But the treatise cited actually states that "if the time for a motion has not run, the remedy under Rule 60(b)(3) is at least as broad as by the other procedures …." *Federal Practice & Procedure*, *supra* § 2860 at 411.

---

[2] JJVC incorrectly argues that the advisory committee notes cite *Hazel-Atlas* in making a statement about Rule 60(b)(3). The advisory notes regarding the 1946 amendment actually state that Rule 60 does not limit the power of the courts to "give relief under the savings clause"—*i.e.* 60(d)—and cites *Hazel-Atlas* only as "an illustration of this situation."

As multiple cases cited in Rembrandt's opening brief make clear, 60(b)(3) contemplates broader relief than is available under other rules, because the policy regarding respecting finality of judgments should yield to fairness issues raised by *timely* 60(b)(3) motions. Opening Br. pp. 38-40. An example of this is that "complicity" is not a requirement for relief under Rule 60(b)(3) when an expert witness commits perjury (fraud). Opening Br. pp. 32-41; *see also Abrahamsen v. Trans-State Express, Inc.*, 92 F.3d 425, 428 (6th Cir. 1996) ("60(b)(3) motion may be granted where … 'testimony given by a material witness is false …'") (quotations omitted); *Federal Practice & Procedure*, *supra* § 2861 at 429 ("Rule 60(b)(3) … [r]elief will lie on a motion from a judgment produced by perjury.").

JJVC's argument that *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir. 1988) is inapposite and that the Eleventh Circuit wouldn't grant relief here, JJVC Br. p. 60, is also flawed. *Bonar* involved an arbitration award and section 10(a)(1) of the Arbitration Act, which contains slightly different language than Rule 60(b)(3). However, the Eleventh Circuit found the standards to be "nearly identical" and stated that "perjury constitutes fraud under Fed.R.Civ.P. 60(b)(3)" on the way to granting relief from an arbitration award obtained after plaintiff's expert lied as to his

qualifications, even though there was no evidence of complicity of the presenting party or its counsel in the false testimony. *Id.* at 1383 n.7 & n.8.

JJVC's argument boils down to asserting that Congress intended to provide relief from judgments when expert witnesses lie to arbitrators, but intended to provide no relief when expert witnesses lie to juries or judges. It seems unlikely that Congress intended to give so little respect to the judicial system.

Numerous cases interpreting 60(b)(3)—which provides for relief for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party"— allow for relief when an expert lies, even without proof of complicity by the presenting attorney/party. "[P]erjury constitutes fraud", *Bonar*, 835 F.2d at 1383 n.7, and "by an opposing party" may only modify misconduct, not fraud.  Even if "by an opposing party" is meant to modify all of 60(b)(3), "misconduct by an opposing party" can cover presentation of false testimony through one's witness, regardless of whether the party knew of the falsity when it presented the testimony. *See Bros*, 351 F.2d at 211 (relief on the ground of misconduct can be granted "whether there was evil, innocent or careless, [sic] purpose"); Opening Br. pp. 49-50. Alternatively, fraud (perjury) of an

expert witness may be attributable to the presenting party for purposes of Rule 60(b)(3). Opening Br. pp. 32-37. These interpretations are consistent with the numerous cases cited in the opening brief interpreting Rule 60(b)(3) to allow for relief when a witness gives false testimony.

JJVC is simply wrong in arguing that *Viskase* involved only 60(b)(2) and did not allow for relief under 60(b)(3) when an expert lies. JJVC Br. p. 60. *Viskase* considered both 60(b)(2) and 60(b)(3) as grounds for relief, and the court in fact granted relief under 60(b)(3). *Viskase Corp. v. Am. Nat'l Can Co.*, 979 F.Supp. 697, 700 ("Under Rule 60(b)(3), [when] a court or jury is presented with perjured testimony which is relevant and material to the issues decided, … the court should not attempt to weigh the effect of the perjured testimony on the trier of fact and should instead order a new trial."), 704 ("since I conclude [Viskase's expert's] testimony was materially false, ANC has satisfied its burden under Rule 60(b)(3)") (N.D. Ill. 1997), *aff'd in relevant part*, 261 F.3d 1316, 1324 (Fed. Cir. 2001) (agreeing judgment was properly set aside even though "Viskase was not aware of the perjury").

The Eleventh Circuit also does not require proof of intentional wrongdoing by counsel or the presenting party in order to grant relief

13

under Rule 60(b)(3) for lies by an expert witness. In *Harre v. A.H. Robins Co.*, the Eleventh Circuit granted relief where attorneys "should have known" of the falsity of testimony given by the expert witness they presented. 750 F.2d 1501, 1503 (11th Cir. 1985). Even "should have known" is not a formal requirement of the Eleventh's Circuit's standard for Rule 60(b)(3) relief, and, to the extent it is, the hiring party's relationship with the expert throughout the litigation and presentation of the false expert testimony at trial meets it. *See id.* at 1505; Opening Br. pp. 42-43, 31-34.

*Harre* also illustrates the flaw in JJVC's argument that the existence of criminal procedures for prosecution of perjury negates the need for any remedy in civil cases when an expert witness lies. JJVC Br. p. 57. As JJVC notes at page 49 of its brief, the expert whose false testimony was detailed in *Harre* was subsequently charged and acquitted of the crime of perjury. On a motion to reconsider its opinion granting Harre a new trial pursuant to Rule 60(b)(3), the Eleventh Circuit vacated the references in its original opinion to perjury by that expert witness, but did not vacate the relief it granted in its original opinion. *Harre v. A.H. Robins Co.*, 866 F.2d 1303 (11th Cir. 1989), *modifying* (*but not vacating in whole*) 750 F.2d 1501 (11th Cir. 1985). The Eleventh Circuit's actions show that when an opposing expert

14

witness lies at trial, the proper remedy is relief from the judgment, regardless of whether the expert is tried or convicted of criminal perjury or whether false testimony is referred to as perjury or something else short of the criminal standard.

JJVC presented Dr. Bielawski to testify on its behalf at trial, and the testimony he gave was replete with inaccuracies and outright lies. The fraud, misrepresentation and misconduct entitles Rembrandt to relief under Rule 60(b)(3).

### 2.   JJVC at a Minimum Should Have Known of the Falsity of Its Expert's Testimony

JJVC's attorneys *should* have known of the falsity of Dr. Bielawski's testimony. They hired Dr. Bielawski and worked with him throughout the litigation to develop his testimony, ordered validation tests, and supplied infringing lenses for the validation testing. Yet they did not produce the data from those tests, and nonetheless presented his testimony to the jury and argued its merit. Opening Br. pp. 43-44; *cf. Harre*, 750 F.2d at 1503, 1505.

It is preposterous for JJVC counsel to admit in a signed declaration they sent infringing Bausch and Lomb and CIBA lenses to Dr. Bielawski

and demanded he prove he can use "proper investigational techniques" to detect infringement with them, A5576 ¶¶ 17-18, but now argue that it never occurred to them that data would result from those validation tests that they needed to produce. JJVC Br. p. 28. It is beyond preposterous for JJVC's counsel to argue now that they were "unaware" of the tests they requested. *Id.*

It also defies logic that the attorneys preparing Dr. Bielawski for his deposition would not have had reason to suspect he did not personally perform the testing of JJVC's or others' lenses. As shown in the emails provided by UT, Dr. Bielawski repeatedly had to turn to others to get basic information about the tests, such as what surface the lens samples were placed on for the testing and whether the testing was done with the machine in positive or negative mode. *See* Opening Br. p. 44; A6719-32. JJVC has been tellingly silent as to what Dr. Bielawski in fact disclosed during deposition preparation. Nor has JJVC offered any explanation for why they ignored, instead of investigated, warning signs of his perjury. Rembrandt confronted them at trial with evidence that the test apparatus logged a different operator for the tests Dr. Bielawski swore he personally performed and recorded pictures of test samples that Dr. Bielawski could

not explain. *See* Opening Br. p. 45. Yet they claim to have done nothing. JJVC Br. pp. 62-63.

## B.    JJVC's Failure-to-Produce Misconduct Also Entitles Rembrandt to Relief under Rule 60(b)(3)

JJVC does not and cannot dispute that it never produced all of the communications and work product of the people who actually did the tests on JJVC's accused lenses, and never produced the validation test results on the CIBA and Bausch and Lomb lenses. Misleadingly, JJVC claims it produced "[almost] all the raw data files" for the tests of JJVC lenses "relied" on by Dr. Bielawski. JJVC Br. pp. 26, 63. What JJVC glosses over is that it did not produce *any* of the data for the validation tests nor *any* of the analyses of the data on the accused JJVC lenses by the Texas Materials Institute (TMI) laboratory managers and graduate students—data and analyses highly unfavorable to JJVC—that Dr. Bielawski considered and suppressed. *See* Opening Br. pp. 21-27.

In other words, JJVC produced most of what it considered favorable to its position, but failed to produce the work of the lab managers and grad students that was inimical to its case. JJVC focuses on the least of its

offenses and ignores the devastating evidence it allowed its alleged expert to suppress.

The processed data files, graphs and plots, and email analyses provided to Dr. Bielawski for his consideration by the TMI laboratory managers and graduate students who actually conducted and had experience with the tests had to be produced. The rules of civil procedure provide that all materials *considered*, not just "relied" on must be produced. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) and its 2010 Advisory Notes ("disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert"). The rules are intended to prevent precisely what happened here: suppression of evidence favorable to the other side.

It is simply not credible for JJVC to suggest it didn't have any reason to know there was any data from the validation testing on CIBA and B&L lenses that it ordered. JJVC incorrectly suggests it should not have had to produce the validation test data because Dr. Bielawski's testimony regarding Bausch & Lomb and CIBA test results was actually referring to tests Dr. Beebe did and testified regarding in litigation against CIBA. JJVC Br. p. 29. This is no justification for withholding the validation test results.

Moreover, Dr. Bielawski's trial testimony explicitly refers to the method of the withheld validation tests: sputtering. He testified that one would see a break at about 20 nanometers as one performs "sputtering." A4696-97; *see also* A4693. The withheld tests concerned *sputtering* TOF-SIMS tests, while Dr. Beebe did not perform *sputtering* TOF-SIMS. A3229-30; A6542-43.

Regardless of whether Dr. Bielawski's fraudulent testimony was allegedly referencing the withheld tests or not, though, TMI experts performed the withheld tests at the behest of JJVC and Dr. Bielawski, the results were given to and considered by Dr. Bielawski, and they should have been produced. Had they been produced, Rembrandt could have used them to show they belied the entire premise of Dr. Bielawski's testimony and JJVC's non-infringement defense. Opening Br. pp. 24-26.

## C.   The Fraud and Misconduct Prevented Rembrandt from Fully and Fairly Litigating its Case

Rembrandt would have been able to use the withheld evidence to show TMI experts reached the same conclusions as Dr. Beebe. No expert report is needed to understand that the withheld evidence was material or that it supports a finding of infringement and shows deep, pervasive deliberate scientific fraud, not just negligence in lying about who did the

tests. Dr. Bielawski's emails show he saw infringement and demanded it be suppressed. *See* Opening Br. pp. 21-22. The TMI laboratory manager documented that there is no valid scientific justification for this fraud. *See id.* pp. 23-24. It is shocking that JJVC and its attorneys to this day do not acknowledge the depth and seriousness of the fraud.

As this Court recognized in *Rembrandt I*, failure to disclose all information underlying an expert's testimony, as required by Rule 26, harms the opposing party by denying "reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." 725 F.3d at 1381 (citation omitted). Why that comment applies to Dr. Beebe and not to Dr. Biewalski is a question that JJVC simply cannot answer, and it makes no attempt to do so. Not only would the hidden facts have bolstered Dr. Beebe's testimony and supported Rembrandt's infringement case while impeaching Dr. Bielawski's testimony, but they would have contradicted testimony of other witnesses presented by JJVC at trial as well.

JJVC continues to argue that one can simply ignore data regarding the first few nanometers of the accused lenses in making conclusions as to whether the lenses have or lack a surface layer. JJVC Br. pp. 26-28.

Withheld evidence belies their argument, A6391, Opening Br. pp. 21-26, and illustrates why non-production was detrimental to Rembrandt.

Although JJVC tries to downplay Dr. Bielawski's role, at trial JJVC made Dr. Bielawski's testing and credibility the cornerstone of their defense. JJVC argued that Dr. Bielawski proved Dr. Beebe was completely uncreditable and what Dr. Bielawski did was "real science" while Dr. Beebe did "junk science." A5141-42; A5151-53, A5159. JJVC and its other UT expert told the jury Dr. Bielawski was a "superstar," A4764,  a "rock star," A5140 , a performer of Nobel Prize work, A4647, and an outstanding scientist honored by the President. A4649. Those statements cannot be reconciled with the argument that Dr. Bielawski was a bit-player in the trial.

JJVC stresses in its brief that it presented two expert witnesses besides Dr. Bielawski: Dr. Paul and Dr. Stephan. JJVC overlooks that Dr. Paul did no tests of his own, but rather relied on Dr. Bielawski. A5002, A5016-18. As Dr. Paul testified, "it's incumbent upon the person who does the experiment to validate that their technique is appropriate and gives accurate results," A4983, yet Dr. Bielawski had no experience performing the techniques he testified about, and the validation testing he had done

21

but suppressed belies his entire testimony. Opening Br. pp. 20-26.

Dr. Stephan also did not conduct any testing of his own, A4594, A4597, and

could not opine the accused lenses do not infringe. A4632-35.

Dr. Bielawski's testimony was not merely cumulative: he was the *only*

witness JJVC presented who had allegedly conducted tests to determine

infringement, and his fraud tainted other JJVC witness testimony as well.

Moreover, *Bonar* teaches that even if Dr. Bielawski's testimony was "merely

cumulative," the need for a new trial would not be negated. It is irrelevant

if a party could have sustained the verdict based on untainted evidence:

"what matters is that [appellee] did offer [its expert witness's] extensive

'expert' testimony to buttress testimony of [other] witnesses and now must

live with the consequences of that decision." *Bonar*, 835 F.2d at 1385 n.12.

Dr. Bielawski's lies and JJVC's incomplete production hid evidence

favorable to Rembrandt's case, evidence that not only contradicted

Dr. Bielawski's testimony but also bolstered Rembrandt's experts'

testimony and supported a finding of infringement. Had the evidence been

available, the jury "might well have reached a different result." *Harre*, 750

F.2d at 1503; *see also* A7455-56. Certainly pre-trial disclosure of the withheld

documents or of Dr. Bielawski's lies "would have made a difference in

[Rembrandt's] approach to the case." *Harre*, 750 F.2d at 1505; Opening Br. pp. 53-55. Accordingly, it was an abuse of discretion to fail to grant Rembrandt a new trial under Rule 60(b)(3). *Id.*; *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346 (5th Cir. 1978).

### 1.   The JMOL on the "Soft" Limitation Does Not Preclude Relief

Regardless of whether a judgment was entered upon a jury verdict, bench trial, JMOL, or summary judgment, the Eleventh Circuit requires only a showing that the fraud, misrepresentation or misconduct prevented full and fair litigation to warrant a new trial pursuant to Rule 60(b)(3). Opening Br. p. 50.The fact that judgment here included a JMOL does not preclude relief under 60(b)(3), nor 60(b)(2). In particular, because the JMOL was the result of a discretionary exclusion ruling, coupled with a ruling refusing to consider circumstantial evidence, it is not a judgment as to the provability of Rembrandt's claim in a new trial.

The fraud and misconduct deprived Rembrandt of a full and fair litigation. Had Rembrandt actually received in discovery truthful and complete information, it would "have made a difference in the way plaintiff's counsel approached the case or prepared for trial," *Rozier*, 573

F.2d at 1342, including as to the soft limitation. For example, Rembrandt could have moved for summary judgment on the surface layer issue—or streamlined its trial evidence on the issue— and thus had more time to present additional evidence regarding the "soft" nature of the accused lenses. Had focus been reduced to the "soft" limitation, trial may even have been avoided since pre-trial JJVC made only the absurd argument that, rather than testing the softness of the accused contact lenses, a "button" of baked, dried polymer should instead be tested. *See* A132-133, A1033-48, A1854-55, A2618. JJVC did not even raise this argument at trial because it would have forced it to admit that *all* evidence—including JJVC's own testing—showed *the actual accused lenses* have a Shore D Hardness of less than five. *See id.*; A5245-46; Fed. Cir. No. 2012-1510 Dkt. 37 pp. 25-26, 33-36.

Discovery misconduct clearly affects the course of a trial.

> Inevitably, information developed in the discovery stages of the case influenced the decision as to which theories would be emphasized at trial. We are left with the firm conviction that disclosure … would have made a difference in the way plaintiff's counsel approached the case or prepared for trial.

*Rozier*, 573 F.2d at 1342 (quotation omitted); *see also Rembrandt I*, 725 F.3d at 1381 (even late disclosure of details "significantly impair[s]" the ability to

"prepare the case"). Full disclosure of the truth would have changed

Rembrandt's approach to the litigation, including how much attention the

"soft" limitation received, and thus it was an abuse of discretion to deny

Rembrandt a new trial. *Rozier*, 573 F.2d at 1342-46.

### 2.    Ample Evidence Exists Proving the Accused Contact Lenses Are Soft that Can Be Presented in a New Trial

The JMOL, and its affirmance by this Court, was no mandate that

Rembrandt's patent infringement claims lacks any merit, or that the "soft"

nature of the accused lenses could never be proven in a new trial. Some

courts—outside the Eleventh Circuit—have required a showing that a

claim or defense is meritorious, in the sense it could be proven, or that

granting a new trial would not be futile, before granting Rule 60(b) relief.

*See, e.g.*, *Sarkes Tarzian, Inc. v. U.S. Trust Co. of Fla. Savings Bank*, 168 F.App'x

108, 113 (7th Cir. 2006); *see also* JJVC Br. p. 45. Even if that were a

requirement in the Eleventh Circuit for Rule 60(b)(3) relief, it is met here as

the circumstances of the JMOL in no way indicate Rembrandt's patent

infringement claim, including the "soft" limitation, could never be proven.

The claim proceeded through trial in the first place because the claim is not

futile.

This Court's ruling in *Rembrandt I* merely affirmed the JMOL on the ground that the District Court's discretionary ruling to exclude Rembrandt's direct testing evidence of "soft" as a sanction pursuant to Rule 37 was not an abuse of discretion, and Rembrandt did not sufficiently raise all the other evidence establishing "soft" in opposing the JMOL motion. 725 F.3d at 1382-83. This Court specifically declined to affirm that exclusion of Rembrandt's direct testing evidence of "soft" was appropriate for lack of scientific merit. *Id.* at 1382. Because *Rembrandt I* did not explicitly or implicitly address the correctness of direct testing of soft under *Daubert*, the mandate rule or law of the case does not apply. *Piambino*, 757 F.2d at 1120.The District Court could certainly allow direct testing evidence in a new trial to prove the soft limitation.

The District Court has already stated it may have ruled differently as to exclusion (and subsequent JMOL), and presumably would rule differently in the context of a new trial, given what it now knows. A7440-41; *see also* 7405-12; A7443-46; A7487-89. Dr. Beebe's "soft" testing testimony was excluded because the judge considered Dr. Beebe giving trial testimony differing from statements in his expert report to be unfair to JJVC and he was concerned about the credibility of Dr. Beebe's testimony

after it was attacked by JJVC and the perjurer, Dr. Bielawski. *See* A4040-63, A5290-95, A5398; A7443-44.[3] In a new trial, JJVC would not be unfairly surprised by expert testimony that is consistent with testimony given in the first trial.

Moreover, a new trial would promote fairness and justice given the unfairness to Rembrandt being presented throughout litigation with fraudulent expert testimony as to the central infringement issue. The unfairness to Rembrandt was greater than whatever unfairness JJVC suffered by being presented truthful trial testimony correcting a differing statement in an expert report as to details of Shore D test sample preparation—details that did not change any overall test results regarding presence or absence of any claim element in the accused lenses. *See* Opening Br. pp. 67, 57; A7404-10.

Granting a new trial would not be futile: "soft" could certainly be proven in a new trial. In fact, the District Court has said proving this element of the patent claim is met by the accused products should be a "lay-up." A4051. Circumstantial evidence alone could prove the lenses are

---

[3] Even the JMOL is tainted by the fraud and misconduct and it cannot stand. Opening Br. pp. 56-61.

"soft" (with a Shore D Hardness of less than five). *See* Opening Br. pp. 67-

68.[4] Also, direct testing evidence showing the accused lenses are "soft"

would not be scientifically baseless but rather consistent with what

"everybody in the entire North American continent knows." A4056.

It is telling that JJVC continues to suggest that Dr. Beebe's Shore D

testing is deficient, and makes Dr. Beebe the focus of its brief, when

Rembrandt put in the post-trial record unrebutted video evidence showing

the Shore D test can be done competently using either the sample

preparation method stated in Dr. Beebe's expert report *or* the sample

preparation method Dr. Beebe testified to a trial, and *either way* the result of

the test is a Shore D Hardness of zero. A5858-67. It is disingenuous for JJVC

to continue to imply that Dr. Beebe's Shore D testing was fabricated or

scientifically baseless. Dr. Beebe's only sin was to document his procedure

---

[4] *Rembrandt I* also does not foreclose using circumstantial evidence in a new trial to prove the "soft" limitation. This Court specifically did not consider whether evidence already in the first trial record besides Dr. Beebe's direct testing testimony established "soft" as a matter of law. Rather, it stated, "[w]e decline to upend the district court's decision on a basis that was not raised below." 725 F.3d at 1383. A ruling that the evidence was not sufficiently raised in opposing the JMOL is not a decision that such evidence cannot be presented in a new trial. Moreover, excluding circumstantial evidence of soft would violate blackletter law. *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006).

incorrectly in his report, and to become flustered on the stand when confronted about it. *See id.*; A5841-45.

In contrast, what Dr. Bielawski did was a serious, deep, material and deliberate fraud. The cavalier attitude and prevarication of JJVC and its attorneys about the seriousness of Dr. Bielawski's fraud highlights the need for relief: JJVC seems to believe they got away with it and the courts should not concern themselves any further.

### III. Rembrandt Also Presented Evidence Meeting the Eleventh Circuit's Standard for Relief under Rule 60(b)(2)

Rembrandt is also entitled to a new trial under Rule 60(b)(2) because the new evidence Rembrandt uncovered is not merely cumulative or impeaching and a new trial would probably produce a new result. JJVC did not dispute that Rembrandt meets the other requirements for 60(b)(2) relief. JJVC Br. pp. 52-53.

As discussed previously, the new evidence was not merely impeaching or cumulative. The new evidence shows the *only* testing JJVC did on its lenses proved infringement. The new evidence not only would have impeached Dr. Bielawski, but also would have supported

Rembrandt's infringement case, bolstered the credibility of Dr. Beebe, and contradicted testimony given by JJVC witnesses besides Dr. Bielawski.

The Eleventh Circuit's requirement for Rule 60(b)(2) relief that a new trial would likely produce a new result is met here. As discussed above, direct testing evidence as well as extensive non-direct testing evidence proves that the accused lenses are "soft" with a Shore D Hardness less than five and could be presented in a new trial. The exposure of Dr. Bielawski's fraud destroys JJVC's only legitimate defense that the accused lenses lack a surface layer with a higher HAM to silicon ratio than the underlying lens body.

JJVC argues that it presented JJVC employees who testified the accused lenses were not created through a coating process and thus lacked what they called a coating/surface layer, *see* JJVC Br. p. 53, A11, A4323-24, A4223-24, A3941, but that does not mean that the outcome would be a finding of non-infringement. Assuming the District Court would require the jury to apply the claim construction in a new trial, lack of coating does

not mean the accused lenses lack a surface layer within the meaning of the patent. A84-93.[5]

JJVC's "coating" defense belies the weakness of JJVC's infringement defense. The real issue is "surface layer" not "coating," and the testing evidence is the *only* evidence that directly proves whether there is a surface layer. Without Dr. Bielawski's fraud, *all* testing evidence proves there is a surface layer, consistent with what JJVC's own consultant told JJVC pre-litigation. A8214-15, Opening Br. p. 65.

## IV. Denying Rembrandt Discovery Was an Abuse of Discretion

Denying Rembrandt any discovery as to the knowledge of JJVC and its counsel relating to the fraudulent expert witness testimony was an abuse of discretion under the extraordinary circumstances here:

- JJVC made arguments and its attorneys' submitted declarations putting their knowledge at issue; A7426-27; JJVC Br. p. 67 (citing A5566-644);

---

[5] *Rembrandt I* did not rule that JJVC's "coating" defense was proper. 725 F.3d at 1380 n.1. This court is free to rule and should rule that "no coating" is an improper defense to the "surface layer" limitation. *See Creative Internet Adver. Corp. v. Yahoo!, Inc.*, 476 F.App'x 724, 728-29 (Fed. Cir. 2011) (failure to give jury instruction clarifying scope of disputed claim term was error because jury may have found infringement based on incorrect claim construction).

- JJVC admitted and the Court assumed that JJVC's expert witness lied repeatedly about his alleged expertise and conduct of tests of the accused contact lenses, A8-9, A7539, *see also* Opening Br. pp. 18-26; *i.e.* Rembrandt had established a *prima facie* case of fraud;

- Rembrandt detailed why JJVC counsel at a minimum had reason to know of, or was on inquiry notice of, the falsity of its expert's testimony; A7661-63; A6136-37; Opening Br. pp. 43-45; and

- The District Court accepted JJVC's arguments that proof of complicity is required for relief, A15, but denied discovery and thus denied relief. A4.

JJVC's counsel filed declarations as to Dr. Bielawski's truthfulness and their belief in his truthfulness. JJVC cannot rely on such declarations without giving Rembrandt discovery necessary to test those assertions.[6] The work product doctrine cannot be used as a shield to discovery of communications put in play by the party asserting the doctrine. *See Stern v.*

---

[6] The limited documentation UT provided has already forced JJVC to recant the sworn assertions as to Dr. Bielawski's truthfulness. *See* A7426-27.

*O'Quinn*, 253 F.R.D. 663, 676-80 (S.D. Fla. 2008) (holding work product protection waived as to materials put at issue and therefore ordering discovery).[7]

Even if JJVC's own actions did not waive work product protection as to its communications with Dr. Bielawski, discovery still should have been permitted because the work product doctrine must yield to "substantial need," and the doctrine may not be used to shield evidence of crime or fraud. Fed. R. Civ. P. 26(b)(3)(A); *Upjohn Co. v. U.S.*, 449 U.S. 383, 399 (1981); *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994).

## Conclusion

This case presents a clear choice for the Court: will the presentation of perjured expert witness testimony, as well as the failure to disclose

---

[7] JJVC has vehemently opposed Rembrandt having any discovery of communications between Dr. Bielawski and JJVC counsel. Although the Texas Attorney General recently ruled—after the filing of this appeal—that certain documents in UT's possession involving communications between its former employee and JJVC counsel are now "public records" and the University will make them available to anyone who requests them, JJVC has threatened to seek sanctions against Rembrandt should it look at the documents. Rembrandt has sought clarification from the District Court that reviewing the documents will not violate the Protective Order in this case or subject it to sanctions. *See* 11-CV-0819 (M.D. Fla.) Dkt. No. 408.

material evidence of infringement, all be excused under the fiction of "no harm – no foul," or will the sanctity of the judicial system be protected from the insidious harm perjury, fraud and misconduct causes? The denial of the Rule 60 motion should be reversed. The judgment should be set aside and the case should be remanded for a new trial. At a bare minimum, this case should be remanded for factual discovery as to complicity. Only with a full record can the Court truly decide what consequences should flow from fraud on the court, and the misconduct evident here.

Respectfully submitted,

/s/Eric J. Magnuson
Ronald J. Schutz
Jacob M. Holdreith
Eric J. Magnuson
Brenda L. Joly
Ryan M. Schultz
Jamie R. Kurtz
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402-2015
Telephone:  612-349-8500
Facsimile:  612-339-4181

*Attorneys for Plaintiff-Appellant*
*Rembrandt Vision Technologies, L.P.*

## Proof of Service

I hereby certify that on April 6, 2015, the foregoing APPELLANT

REMBRANDT VISION TECHNOLOGIES, L.P.'S REPLY BRIEF was filed

with the Clerk of the Court for the United States Court of Appeals for the

Federal Circuit using the appellate CM/ECF system which pursuant to

Federal Rule of Appellate Procedure 25(c)(2) and Federal Circuit ECF-6(A)

constitutes service on all parties represented by attorneys who have

registered for the CM/ECF system, and that a copy was served on counsel

of record for Defendant-Appellee via e-mail:

> Patterson, Belknap, Webb, & Tyler LLP
> 1133 Avenue of the Americas
> New York, NY 10036
>
> Gregory L. Diskant          gldiskant@pbwt.com
> Eugene M. Gelernter         emgelernter@pbwt.com
>
> Jenner & Block LLP
> 353 N. Clark St.
> Chicago, IL 60654
>
> Timothy J. Barron           tbarron@jenner.com

Dated:  April 6, 2015          By: /s/Eric J. Magnuson
                                   Eric J. Magnuson
                                   Counsel for Plaintiff-Appellant

## Certificate of Compliance
## with Type-Volume Limitation, Typeface Requirements,
## and Type Style Requirements

The undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 6,999 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

The undersigned also hereby certifies that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Book Antiqua type style, with 14-point or larger Franklin Gothic Book type style headings.

As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C)(i), the undersigned has relied upon the word count of this word processing system in preparing this certificate.

Dated:  April 6, 2015                By: /s/ Brenda L. Joly
                                          Brenda L. Joly
                                          Counsel for Plaintiff-Appellant

85740049.1